1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Debra K. Stewart,<br><br>            Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of<br>Social Security,<br><br>            Defendant. | No. CV 11-00451-PHX-NVW<br><br>**ORDER** |

Debra K. Stewart seeks review under 42 U.S.C. §§ 405(g), 1383(c)(3), of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her supplemental security income under the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.    Background**

**A.    Factual Background**

Stewart was born on March 17, 1959. She was 47 years old on the date her application was filed. She has an eighth grade education and is able to communicate in English. She does not have a history of past relevant work.

In 2005, Stewart was treated for low back pain and right upper extremity pain with swelling. In 2006, she was treated for carpal tunnel syndrome on both wrists, upper and

lower extremity neuropathy, burning sensations, numbness, and ongoing severe pain. In 2007, she had carpal tunnel release surgery on her left wrist, but continued to experience pain, swelling, and numbness. In 2008, she was diagnosed with fibromyalgia and myofascial pain syndrome. In 2009, she continued to receive treatment for chronic pain.

**B. Procedural History**

On June 22, 2006, Stewart applied for supplemental security income, alleging disability beginning January 2, 2002. The application was denied on initial review and again on reconsideration, after which Stewart requested that her claim be heard by an ALJ. On October 1, 2008, an administrative hearing was held at which Stewart testified and was represented by counsel. George J. Bluth, an impartial vocational expert, also appeared at the hearing. On June 22, 2009, a supplemental hearing was held. Stewart, through her attorney, moved to amend the alleged onset date to June 1, 2006. On September 18, 2009, the ALJ issued her decision that Stewart was not disabled within the meaning of the Social Security Act.

On January 7, 2011, the Appeals Council denied Stewart's request for review of the ALJ's unfavorable decision, making that decision the final decision of the Commissioner. On March 8, 2011, Stewart sought judicial review of the decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

**II. Standard of Review**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole

and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### III. Five-Step Sequential Evaluation Process

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). If the ALJ determines that the claimant is disabled or not disabled at any step, the ALJ does not continue to the next step. The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If so, the claimant is not disabled and the inquiry ends. *Id.* At the step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meet or equal an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled

1 and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**IV. Analysis**

At step one, the ALJ found that Stewart has not engaged in substantial gainful activity since June 1, 2006, the alleged onset date of disability. At step two, the ALJ found that Stewart had the following severe impairments: "fibromyalgia, status post left carpal tunnel surgery (median nerve decompression); morbid obesity." At step three, the ALJ found that Stewart did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Stewart does not raise any issues related to the ALJ's determinations at the first three steps of the five-step sequential evaluation process.

The ALJ determined that Stewart:

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the limitations outlined below in exhibit 19F.

At step four, the ALJ determined that Stewart does not have any past relevant work and therefore is unable to perform past relevant work. At step five, the ALJ concluded that, considering Stewart's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Stewart could perform.

**A. Weighing Medical Source Evidence**

**1. Legal Standard**

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v.*

*Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.*

Finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion should be rejected:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn*, 495 F.3d at 631-32 (quoting Social Security Ruling 96-2p). Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id.* at 632.

### 2. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

Stewart contends the ALJ erred by rejecting the opinion of treating physician Vijayabhanu Mahadevan, M.D. The ALJ stated that she accepted the conclusions of examining physician Marisa Sosinsky, M.D., in Exhibit 19F, which included the opinion that Stewart was able to perform at least light work on a sustained basis with certain limitations, and rejected the medical assessment of Dr. Mahadevan because it was not supported by the overall medical evidence of record, including Dr. Mahadevan's notes.

- 6 -

In December 2007, Dr. Mahadevan began treating Stewart, and in February 2008, he diagnosed her with fibromyalgia. On September 23, 2008, Dr. Mahadevan completed a medical assessment in which he opined that Stewart could sit, stand, or walk less than one hour each in an eight-hour work day and she could not perform sustained work eight hours a day, five days a week. Exhibit 19F indicates that Stewart can sit without interruption for 4 hours, stand without interruption for 3 hours, walk without interruption for 3 hours, sit for a total of 6 hours in an 8-hour work day, stand for a total of 4 hours in an 8-hour work day, and walk for a total of 4 hours in an 8-hour work day.

In order to reject treating physician Dr. Mahadevan's contradicted opinion, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record. *See Lester,* 81 F.3d at 830. The ALJ stated:

> The claimant was given a diagnosis of fibromyalgia, which was based mainly on subjective statements by the claimant, as in exhibit 17F, by Dr. Mahadevan. His medical assessment was rejected as [it was] not supported by the overall medical evidence of record, including his own notes. There was no edema, with mild degenerative lumbar disc disease and no significant joint disease and normal strength. There was no numbness down the legs. There was no right hip joint pain and some wrist pain. There was no cervical pain and no neurological symptoms in the record to support fibromyalgia. Most examinations in the medical record were basically normal, with normal strength, bulk and tone. There were no herniated discs an[d] the State agency evaluations supported a finding of medium work. The findings in exhibit 18F supported a conclusion that wrist pain, and arm pain, plus a history of carpal tunnel syndrome release, do not limit functional limitations beyond light work activity. There was no atrophy in the hands and strength was normal. The neurological examination was also normal in exhibit 11F. An EMG in exhibit [6F] in January 2007 and nerve conduction study were normal, with no evidence of neuropathy. Grip strength was normal.

These reasons are specific, legitimate, and supported by substantial evidence in the record.

**B.     Subjective Symptom Testimony**

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine

- 7 -

whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).[1] To support a lack of credibility finding, the ALJ is required to point to specific facts in the record that demonstrate that Stewart's symptoms are less severe than she claims. *Id.* at 592. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citations omitted).

To be found credible regarding subjective pain or fatigue, a claimant is not required to: (1) produce objective medical evidence of the pain or fatigue itself, or the severity thereof; (2) produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom; or (3) show that his impairment could reasonably be expected to cause the severity of the alleged symptom, only that it could reasonably have caused some degree of the symptom. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

---

[1] Contrary to the Commissioner's contention, *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991), does not permit finding subjective symptom testimony not credible without articulating clear and convincing reasons. The Commissioner correctly quotes *Bunnell* as stating an ALJ must make specific findings, supported by the record, to support his conclusion that a claimant's allegations of severity are not credible. *See id.* at 345. But *Bunnell* does not address whether the reasons must be clear and convincing. Rather, it addresses whether an ALJ may discredit a claimant's allegations of the severity of pain solely on the ground that the allegations are unsupported by objective medical evidence.

## 2. The ALJ Did Not Err by Finding Stewart's Subjective Symptom Testimony Not Fully Credible.

Stewart contends that the ALJ erred by failing to set forth specific, clear, and convincing reasons to reject Stewart's testimony about the severity of her subjective symptoms. Stewart testified that she can stand, sit, or walk for no more than 40 minutes at a time because doing so for more than 40 minutes causes her back to hurt and burn. She has difficulty sleeping during the night and naps during the afternoon, but has an average energy level. She did not testify that she is too tired to work full-time. She also testified that she has swelling in her hands and feet, which is caused by her prescription medication for fibromyalgia. She said she drives, cleans her room, does her own laundry, and does quick cooking. In an average week, she stays home about four days. She lives with her son, his wife, and their three children.

The administrative hearing decision states:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credited to the extent they are inconsistent with the above residual functional capacity assessment. The claimant stated she could drive 3 times a week and keeps her room clean. She lives with her son and their children. The claimant had treatment for carpal tunnel syndrome, but in exhibit 18F, p. 8, it was noted the pain was no longer there after surgery. The claimant stated in exhibit 19F, p. 2 that the left carpal tunnel surgery did not help and she had more wrist pain after surgery. Dr. Flitman, in exhibit 22F, indicated there was no evidence of carpal tunnel syndrome in August 2008. Thus, she is precluded from repetitively using her hands but can frequently use them at light levels.
>
> There are no records indicating significant side effect from medication.
>
> In exhibit 24F, the claimant alleged a new symptom, left shoulder pain, which was present in January 2009. The claimant was given exercises because she was leaving town for several weeks. The left shoulder is an acute problem that may not impose limits that would cause her to be disabled for 12 continuous months. However, there is no evidence that the claimant would be prevented from performing at least light work on a sustained basis for a 12-month period of time. The left shoulder issue is not resolved, it is a possible rotator cuff tear.

> The claimant was obese, but had normal neurological status and a normal gait to this point. The obesity and lumbar disc disease and fibromyalgia do limit her to light work.

Exhibit 18F, page 8, dated September 19, 2007, indicates that six weeks following carpal tunnel release surgery, Stewart reported that she occasionally has shooting pains into her wrist and arm, has swelling about her hand and wrist, and still has numbness, but "she acknowledges that the pain that she was having before surgery, particularly at night, was no longer there." She reported having no pain with combined wrist and finger extension, but did have a pulling sensation with individual finger motion.

Exhibit 19F, page 2, dated February 4, 2009, indicates that Stewart reported having more wrist pain than prior to the carpal tunnel surgery and that she did not think the surgery reduced the numbness and tingling in her hands. Exhibit 22F, dated March 2, 2009, shows that upon examination by an independent neurologist, there was "no evidence for reactivation of left carpal tunnel syndrome."

The ALJ did not reject Stewart's subjective symptom testimony entirely. She found Stewart's testimony not fully credible to the extent that Stewart said she was unable to perform light work full-time. The ALJ's determination of Stewart's residual functional capacity limits use of her hands and feet and requires that uninterrupted walking, standing, and sitting be limited to three or four hours per day. The ALJ identified evidence in the record that indicated Stewart can make frequent but not unrestricted use of her hands and that Stewart is physically able to do many life activities.

Thus, the ALJ provided specific, clear, and convincing reasons for rejecting Stewart's testimony about the severity of her symptoms.

### C. Residual Functional Capacity

Stewart contends the ALJ's residual functional capacity assessment does not meet legal standards because it includes the term "light work." The use of the term "light work" here does not violate legal standards because it is coupled with function-by-

function assessment and is not used at step four to find that Stewart is able to perform past relevant work.

A claimant's residual functional capacity is "what an individual can still do despite his or her limitations." Social Security Ruling 96-8p. The residual functional capacity determination is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.*

Social Security Ruling 96-8p explains:

> At step 4 of the sequential evaluation process, the [residual functional capacity] must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.
>
> [Residual functional capacity] may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.
>
> At step 5 of the sequential evaluation process, [residual functional capacity] must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do. However, in order for an individual to do a full range of work at a given level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level.

Social Security Ruling 96-8p. "Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

The hearing decision states:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the limitations outlined below in exhibit 19F.

The Social Security regulation cited, 20 C.F.R. § 416.967(b), provides the following definition for light work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls.

Exhibit 19F is Dr. Sosinsky's medical assessment that Stewart can frequently carry and lift up to 10 pounds, occasionally carry and lift 11 to 50 pounds, sit without interruption for 4 hours, stand without interruption for 3 hours, walk without interruption for 3 hours, sit for a total of 6 hours in an 8-hour work day, stand for a total of 4 hours in an 8-hour work day, and walk for a total of 4 hours in an 8-hour work day. The assessment also indicates that Stewart can frequently reach, handle, finger, feel, and push/pull with either hand and frequently operate foot controls with either foot. It further indicates that Stewart can occasionally climb stairs and ramps, climb ladders or scaffolds, balance, kneel, crouch, and crawl and frequently stoop. Finally, Exhibit 19F states that Stewart can frequently operate a motor vehicle and occasionally be exposed to unprotected heights; moving mechanical parts; humidity and wetness; dust, odors, fumes, and pulmonary irritants; extreme cold; extreme heat; and vibrations.

Thus, the residual functional capacity assessment expressly incorporates functional limitations from the regulation's definition of "light work" and from Exhibit 19F.

IT IS THEREFORE ORDERED affirming the final decision of the Commissioner of Social Security denying Debra K. Stewart disability benefits.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant against Plaintiff and that Plaintiff take nothing. The Clerk shall terminate this action.

DATED this 13th day of February, 2012.

_____
Neil V. Wake
United States District Judge